**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**GILBER ROSA-SANCHEZ,**

      **Petitioner,**

**v.**                                     **Civil Action No.: 3:23-CV-237
(GROH)**

**HEATHER L. RAY,**

      **Respondent.**

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

On November 27, 2023, the pro se Petitioner Gilbert Rosa-Sanchez, an inmate incarcerated at FCI Hazelton, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, claiming that the Bureau of Prisons ("BOP") is denying him Earned Time Credit ("ETC") under the First Step Act ("FSA"). ECF No. 1 at 1, 5.[1] The Petitioner paid the filing fee on the same date he filed his petition. ECF No. 3.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

---

[1] All ECF numbers cited herein are from the instant case, 3:23-CV-237, unless otherwise noted.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Conviction and Sentence[2]

On November 17, 2016, an indictment was returned in the Northern District of New York charging the Petitioner and several codefendants conspiracy to possess with intent to distribute and to distribute cocaine. ECF No. 11. The Petitioner entered a guilty plea on March 23, 2017. See March 23, 2017, Text Minute Entry; ECF Nos. 119 at 2, 121 at 1, 183. On August 29, 2017, the Petitioner was sentenced to 120 months of incarceration. ECF Nos. 136 at 2. 143.

### B.   Direct Appeal

On September 10, 2017, the Petitioner filed a notice of appeal with the United States Court of Appeals for the Second Circuit, in that Court's docket 17-2817. ECF Nos. 139, 236. On or about April 11, 2018, the Second Circuit ordered the matter be remanded to the district court, upon the Petitioner's motion. ECF Nos. 236, 240.

### C.   Motions to Vacate Pursuant to 28 U.S.C. § 2255

On June 21, 2018, the Petitioner filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. ECF Nos. 290[3], 290-1 through 290-3. On March 6, 2019, the district court issued a Decision and Order denying the Petitioner's motion filed under § 2255. ECF No. 358. In its March 6, 2019, order, the district court noted that the Defendant affirmed in an affidavit that his "sole purpose in this motion to vacate is simply to have the two-point garage enhancement removed and that I am

---

[2] The facts are taken from Petitioner's criminal conviction in the Northern District of New York, in case number 5:16-CR-342, available on PACER. Unless otherwise noted, the ECF entries in sections II.A., II.B., and II.C. refer to that criminal case. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[3] This motion was also assigned civil action number 5:18-CV-732.

satisfied with the plea itself and do not wish to attack any aspect of the plea whatsoever." ECF No. 358 at 3.

The Petitioner filed an appeal[4] of that district court order to the Second Circuit by filing a notice of appeal on April 4, 2019, in that court's docket number 19-885. ECF Nos. 359, 374. On May 3, 2019, the Second Circuit dismissed the Petitioner's appeal because he had not obtained a certificate of appealability from the district court. ECF No. 374. The Second Circuit then reconsidered the Petitioner's appeal related to the personal money judgment entered against him, and affirmed the judgment of the district court on October 1, 2019. ECF No. 376. On December 12, 2019, the Second Circuit denied the Petitioner's motion for a certificate of appealability and again dismissed his appeal 19-885. ECF No. 385.

The Petitioner filed another appeal with the Second Circuit on December 3, 2019, in docket number 19-4042. ECF No. 379. On April 9, 2020, the Second Circuit again denied the Petitioner a certificate of appealability, and dismissed his appeal. ECF No. 400.

On April 29, 2021, the Petitioner filed another appeal with the Second Circuit, in docket number 21-1104. ECF No. 411. The Second Circuit construed this matter as a request to file a second or successive § 2255 motion. ECF No. 428. On October 26, 2021, the Second Circuit denied the Petitioner's motion because he had not satisfied the criteria set forth in 28 U.S.C. § 2255(h). Id.

The Petitioner again sought a certificate of appealability in the Second Circuit,

---

[4] Petitioner also filed an interlocutory appeal in 06-50804, which was denied by the Second Circuit on August 8, 2006 [ECF No. 331], and an appeal in 08-50539 which was dismissed because "a review of the docket of the district court shows no order or ruling from which an appeal can be taken" [ECF No. 367].

docket number 21-2855, on November 14, 2021. ECF Nos. 426, 432. The Second Circuit again denied the certificate and dismissed the appeal because "it lacks an arguable basis either in law or in fact." Id.

Most recently, the Petitioner filed a motion to reduce sentence on February 26, 2024. ECF No. 439. That motion remains pending.

### D.      Instant Proceedings Under 28 U.S.C. § 2241

Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, on November 27, 2023, along with a memorandum and exhibits in support of his claims. ECF Nos. 1, 2, 2-1 through 2-5. In his petition, the Petitioner contends that he has wrongfully been denied Earned Time Credit under the First Step Act because the BOP "falsely claimed" that he had a final order of removal, thereby denying him one year of time credit. ECF No. 1 at 5. Further, the Petitioner asserts that he was deemed eligible for ETC in February 2023, but in August 2023, he was advised that he was denied eligibility for ETC. Id.

In his memorandum the Petitioner claims that the BOP illegally denied him Earned Time Credits, "denying him one year of freedom." ECF No. 2 at 1. He further contends that in 2022, the BOP claimed he was ineligible for ETC under the FSA "merely because he had an 'ICE Detainer.'" Id. The Petitioner further contends that he exhausted his administrative remedies by filing a BP10 to the Regional Office, and that on March 6, 2023, the BOP "restored his eligibility for ETC under [the] FSA."[5] Id. On August 16, 2023, the Petitioner was notified that he was no longer eligible for ETC

---

[5] In support of his assertion that his eligibility for ETC was restored, the Petitioner filed the response from the Regional Administrative Remedy Appeal dated March 6, 2023, Remedy ID Number 1142708-R2, which states in part, "Upon review of your appeal, your earned FTC have been applied. You currently have a First Step Act Release date of April 15, 2024." ECF No. 2-2 at 6.

under the FSA because the BOP stated that the Petitioner was subject to a Final Order of Removal. Id. The Petitioner contends that there is "either an error by the BOP or a deliberate attempt to deny [him] ETC under [the] FSA." Id. at 2. Further, the Petitioner notes that at his sentencing on August 29, 2017, the sentencing judge remarked that a detainer was lodged by ICE against the Petitioner, and that "upon completion of his federal sentence he would eventually face an Immigration Judge, and be given an attorney to litigate his alien status." [6] Id.

The Petitioner asserts that on January 14, 2021, when he was housed at the ICE Moshannon Valley Correctional Facility,[7] he was served a document which stated that as of March 11, 2019, ICE had lodged a detainer against him, and that there were pending ongoing removal proceedings against him. Id. He contends that he was "never shows" another "authentic" document indicating the entry of a final order of removal. Id. The Petitioner argues that he meets the eligibility requirements under the First Step Act, specifically under 18 U.S.C. § 3632(d)(4)(D) and (E). Id. at 3. Further, the Petitioner claims that "[e]ither the BOP's claim is false that Petitioner has a 'final order' for removal, or the BOP has somehow caused ICE to illegally issue a 'final order.'" Id. He continues that if "the BOP did actually obtain a final order of removal sometime after Petitioner's sentencing, obtained from ICE, it was obtained illegally. . . without due process." Id.

The Petitioner contends that any final order of removal was "obtained by

---

[6] The transcript from the sentencing hearing contains the following instruction by the Court related to the Petitioner's immigration status, "Third, you shall report to and remain in contact and cooperate with the Bureau of Immigration and Customs Enforcement, and you shall fulfill any requirements of U.S. Immigration Law." N.D.N.Y. 5:16-CR-342, ECF No. 143 at 16: 19–22. There is no further reference in the transcript to a detainer, removal, or immigration proceedings.

[7] https://www.ice.gov/detain/detention-facilities/moshannon-valley-processing-center

circumventing the conditions for a lawful final order described in 8 C.F.R. § 1241.31," there "was no immigration judge" and that he was denied the opportunity to appeal. Id. at 4. The Petitioner further contends he was denied access to and right to counsel under 8 U.S.C. § 1362.[8] Id. In support of this argument, the Petitioner cites to another case from this district, Cuero-Garcia v. H. L. Ray, 5:23-CV-209, where he asserts a final order resulted in the Petitioner having ETC restored.[9]

Among the attachments to his memorandum are copies of various BOP forms and letters:

(1)      "Inmate Request to Staff" dated September 7, 2023 [ECF No. 2-1 at 2];

(2)      "Request for Administrative Remedy; Informal Resolution Form" dated August 17, 2023 [Id. at 3];

(3)      Administrative Remedy Form dated August 23, 2023, assigned Case Number 1174834-F1 [Id. at 4];

(4)      "Request for Administrative Remedy: Administrative Remedy #1174834-F1" denial dated November 20, 2023 [Id. at 5];

(5)      Regional Administrative Remedy Appeal dated September 21, 2023 [Id. at 6];

(6)      Two copies of Central Office Administrative Remedy Appeal dated November 14, 2023 [Id. at 7–8];

---

[8] The provision which the Petitioner cites, 8 U.S.C.A. § 1362, provides:

In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

[9] A review of that case shows that on August 24, 2023, the case was dismissed without prejudice as moot based on the petitioner's release from BOP custody on August 7, 2023, into the custody of Immigrations and Customs Enforcement. 5:23-CV-209, ECF No. 10.

(7)     Rejection Notice for Administrative Remedy Appeal 1174834-R2, dated October 10, 2023 [Id. at 10];

(8)     Letter dated October 3, 2023, from Petitioner, marked as received on October 10, 2023, directed to Angela Kelly, C.P. Specialist, BOP Designation and Sentence Computation Center [Id. at 11];

(9)      Untitled document dated December 7, 2019, which indicates that the Petitioner is First Step Act eligible, with a low recidivism risk level [Id. at 13];

(10)    "Inmate Request to Staff" dated September 7, 2023 [Id. at 14];

(11)    "Request for Administrative Remedy: Informal Resolution Form" dated August 17, 2023 [Id. at 15];

(12)    Denial of "Request for Administrative Remedy: Administrative Remedy #1174834-F1," dated July 18, 2023 [Id. at 16];

(13)    "Request for Administrative Remedy" dated August 23, 2023, for Case Number 1174834-F1 [Id. at 17];

(14)    "Regional Administrative Remedy Appeal" dated September 21, 2023 [Id. at 18];

(15)    "Inmate Education Data Transcript" dated September 6, 2023 [Id. at 19];

(16)    "Individualized Needs Plan – Program Review" dated September 20, 2023 [Id. at 20–22]; and

(17)    TRULINCS message to the Petitioner from Dennis Vazquez, dated September 16, 2023 [Id. at 24];

(18)    "Request for Administrative Remedy: Informal Resolution Form" dated November 9, 2022 [ECF No. 2-2 at 2];

(19)    "Request for Administrative Remedy" dated November 18, 2022 [Id. at 3];

(20)    Denial of "Request for Administrative Remedy: Administrative Remedy #1144156-F1," dated December 30, 2022, signed by Warden H. L. Ray [Id. at 4];

(21)    "Regional Administrative Remedy Appeal" dated December 29, 2022, marked received January 4, 2023, and assigned case number 1142708-R1 [Id. at 5];

(22)    "Regional Administrative Remedy Appeal" Remedy ID Number 1142708-R2, dated March 6, 2023, and signed by C. Gomez, Regional Director of the Mid-Atlantic Region, which advises that the Petitioner's "earned FTC have been applied. You currently have a First Step Act Release date of April 15, 2024" [Id. at 6];

(23)    "Sentence Monitoring Computation Data" sheet dated August 16, 2023, which projects the Petitioner's release date as May 12, 2025, based on a "Final Order of Removal: Detainer Updated to Final Order on Aug[ust] 9, 2023" [ECF No. 2-3 at 2–3];

(24)    "Sentence Monitoring Computation Data" sheet dated February 14, 2023, which projects the Petitioner's release date as October 16, 2023, and which notes that "Probable Cause Exists that the Subject is a Removeable Alien Re-Lodged for Allenwood on 01-14-2021" [ECF No. 2-4 at 2–3];

(25)    "Department of Homeland Security: Immigration Detainer – Notice of Action," dated March 11, 2029, which finds that probable cause exists that the subject is a removeable alien based on "[t]he pendency of ongoing removal proceedings against the alien" [ECF No. 2-5 at 2];

(26)   Letter from the U.S. Department of Justice Executive Office for Immigration Review, dated October 25, 2023, which returns the Petitioner's correspondence because there is no Alien number or "A" Number listed and no record of the case pending [Id. at 3]; and

(27)   Letter from the Petitioner to the Clerk of Court for the Northern District of West Virginia, dated October 16, 2023, requesting two appeal forms [Id. at 5].

As relief, the Petitioner asks the Court to order: (1) order the BOP to reinstate his eligibility for ETC under the FSA, and grant him a 265-day credit; or in the alternative (2) order Immigrations and Customs Enforcement to reverse his "illegally obtained Final Order [of Removal], resulting in restoration of . . . [his] ETC under [the] FSA." Id. at 8.

The Respondent filed a motion to dismiss, or in the alternative, motion for summary judgment, and memorandum and exhibits in support thereof on January 26, 2024. ECF Nos. 13, 13-1 through 13-6. In the memorandum, the Respondent argues that the Petitioner is ineligible for Earned Time Credits under the First Step Act because he is the subject of a final order of removal under the immigration laws. ECF No. 13-1 at 5. The Respondent asserts that Immigration and Customs Enforcement ("ICE") lodged a detainer with the BOP, "indicating that probable cause exists that Petitioner is a removable alien." Id. at 6.

The exhibits attached to the Respondent's motion and memo include a Declaration by Lottie Dodd-Winfield, a Correctional Programs Specialist at the Mid-Atlantic Regional Office of the Bureau of Prisons. ECF No. 13-2. Therein, Dodd-Winfield declares that the Petitioner's projected Good Conduct Time release date is May 12, 2025. Id. at 1, ¶ 2. Attached to the declaration is the Petitioner's "Public Information

9

Inmate Data" sheet, dated January 3, 2024, which confirms that projected Good Conduct Time release date of May 12, 2025. ECF No. 13-3 at 1. Dodd-Winfield further declares that although the Petitioner was deemed eligible to receive First Step Act Time Credits based on his offense of conviction, on August 9, 2023, ICE "sent the BOP an 'Immigration Detainer – Notice of Action" letter  notifying the BOP that Petitioner had a final order of removal against him. Id. at 2, ¶¶ 4, 5. Attached to the declaration is a "Department of Homeland Security: Immigration Detainer – Notice of Action" ("the detainer") dated August 9, 2023, which states that the Department of Homeland Security "has determined that probable cause exists that the subject is a removable alien," because there is "[a] final order of removal against the alien." ECF No. 13-6. Further, the detainer states that the identity of the Petitioner's identity has been confirmed based on biometric data and a records check of federal databases.[10] Id. The detainer is signed by Immigration Officer Robert G. Faber. Id.

On March 12, 2024, the Petitioner filed a document styled "Declaration of Gilbert Rosa-Sanchez", wherein he contends that: (1) neither the Respondent nor Dodd-Winfield have submitted "all copies of the Final order of removal," which the Petitioner contends is four pages consisting of the immigration detainer notice of action, warrant for arrest of the alien, and the final removal order [ECF No. 21 at 1]; (2) he has never seen an immigration judge or officer, as required under immigration laws [Id. at 2]; and (3) the Petitioner and his "commonlaw wife" have attempted to verify through the United States Executive Office for Immigration Review the existence of his final order of removal, but no records were found for case number 098-375260 [Id. at 3].

---

[10] The detainer identifies the Petitioner by three separate aliases: Julian Lucia Cedano, Gilbert Rosa Sanchez, and Gilberto Rosa Sanchez. ECF No. 13-6.

Attached to his response are the following exhibits: (1) "Memorandum for Inmate Population" dated February 20, 2024, which identifies inmate representatives from each housing unit at FCC Hazelton [ECF No. 21-1]; (2) "Department of Homeland Security: Immigration Detainer – Notice of Action" dated August 9, 2023, and signed by Immigration Officer Robert G. Faber [ECF No. 21-2 at 1]; (3) "U.S. Department of Homeland Security: Warrant for Arrest of Alien," also known as the Form I-200, dated August 9, 2023, for Julian Lucia Cedano [Id. at 2], and the "Continuation Page for Form I-200" which states that Julian Lucia Cedano is also known by other aliases, Gilbert Rosa Sanchez and Gilberto Rosa Sanchez [Id. at 3]; (4) "Final Administrative Removal Order"[11] dated January 15, 2021, for Julian Lucia Cedano AKA Gilbert Rosa Sanchez, and Gilberto Rosa Sanchez [Id. at 4]; (5) Denial of "Request for Administrative Remedy: Administrative Remedy #1174834-F1," signed by Warden H. L. Ray, dated July 18, 2023 [ECF No. 21-3 at 1]; (6) "Request for Administrative Remedy" signed by the Petitioner and dated August 23, 2023 [Id. at 2]; (7) Letter from the U.S. Department of Justice Executive Office for Immigration Review, dated October 25, 2023, which states that the Petitioner's submission was returned because the Board of Immigration

---

[11] The Final Administrative Removal Order states that:

Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Officer of the Department of Homeland Security, make the following findings of fact and conclusions of law. I find that you are not a citizen or national of the United States and that you are not lawfully admitted for permanent residence. I further find that you have a final conviction for an aggravated felony as defined in section 101(a)(43)[ ] of the Immigration and Nationality Act (Act) as amended, 8 U.S.C. 1101(a)(43)[ ] and are ineligible for any relief from removal that the Secretary of Homeland Security, may grant in an exercise of discretion. I further find that the administrative record established by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii). By the power and authority vested in the Secretary of Homeland Security, and in me as the Secretary's delegate under the laws of the United States, I find you deportable as charged and order that you be removed from the United States to: NETHERLANDS or to any alternate country prescribed in section 241 of the Act.

ECF No. 21-2 at 4.

Appeals shows no record that the case referenced in the Petitioner's submissions was pending [ECF No. 21-4] at 1; (8) Letter dated October 16, 2023, from the Petitioner to the Clerk of the Executive Office for Immigration Review [Id. at 3]; (9) Letter from the U.S. Department of Justice Executive Office for Immigration Review, dated January 31, 2024, which states that the Petitioner's submission was returned because the Petitioner failed to identify his case number with a Board of Immigration Appeals number, "retrievable primarily by the alien's 9-digit registration number ("A" number)," and which advised that "[a]s your submission does not provide the "A" number, this case cannot be located. [ECF No. 21-5 at 1]; (10) Letter from the Petitioner to the Clerk of the U.S. Department of Justice Immigration Court at the York County Prison in York, Pennsylvania, dated January 16, 2024, stating that the Petitioner was aware that he had a detainer, but not a final order, and that he does not have an "A" number [Id. at 3]; and (11) Letter to the Petitioner from the Clerk of Court for the Northern District of West Virginia, dated January 8, 2024, in response to the Petitioner's January 3, 2024, letter request for "forms to challenge a final order of deportation lodged by immigration," which advised that "[t]he District Court does not handle appeals of immigration orders." [ECF No. 21-7].

The Petitioner also filed three responses to the Motion to Dismiss on March 12, 2024. ECF Nos. 22, 23, 24. The first document is styled, "Motion In Opposition To Respondent's Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment." ECF No. 22. Therein, the Petitioner argues that neither dismissal nor summary judgment is warranted because he has stated a valid claim, and there remain genuine issues of material fact. Id. at 1–4. The Petitioner contends that at the time when

he was given a BOP Risk and Needs Assessment and determined to be eligible to earn FSA Time Credits he "had no detainers and/or notifications of any Final Order of Removal lodged against him." <u>Id.</u> at 6. He contends that officials failed to comply with the procedure established in 18 U.S.C. § 3632(d)(4) related to the loss of FSA Time Credits. <u>Id.</u> He summarizes his entire argument:

> [T]he petitioner herein was previously awarded his time credits based upon Risk and needs Assessment and it was only after a "Final Order of Removal" was lodged against him that these time credits were arbitrarily taken from him without any sort of Due Process. Furthermore, such Final Order of Removal does not affect the award of FSA time credits as those accumulated time credits could/would only result in an expedited transfer into INS custody for proper adjudication regarding the Final Order of Removal.

<u>Id.</u> at 7.

Petitioner's second document filed on March 12, 2024, is titled, "Motion With Memorandum In Support To Respond [sic] The Respondent [sic] Motion To Dismiss Or In The Alternative, For Summary Judgment." ECF No. 23. Therein, the Petitioner contends that the BOP unlawfully revoked his FSA Earned Time Credits "after the credits have been applied." <u>Id.</u> at 2.

The Petitioner's third document is styled, "Memorandum In Support To Respond To The Respondent [sic] Motion To Dismiss Or In The Alternative for Summary Judgment." ECF No. 24-1. Therein, the Petitioner argues that Pursuant to BOP Program Statement 5410-01 and 28 C.F.R. 523.40–44, the BOP does not have the authority "to revoke Earned Time Credits that have been applied to eligible inmates." <u>Id.</u> at 2. The Petitioner contends that the decision in <u>Fikre v. Federal Bureau of Investigation</u>, 35

F.4th 762 (9th Cir. 2022),[12] supports his claim because there the plaintiff's removal from the No Fly List was an individualized determination rather than a change of policy, and similarly the decision to revoke the Petitioner's Earned Time Credits was an individualized determination, rather than a change in policy. Id. at 2–3.

Attached to this document are the following exhibits:

(1) FSA Incentive Event flier with list of eligible inmates, including the Petitioner [ECF No. 24-2];

(2) "FSA Time Credit Assessment" form for assessment date October 6, 2023, which among other information states that the BOP "[c]annot apply FTC" for the Petitioner [ECF No. 24-3 at 1];

(3) "Sentence Monitoring Computation Data" sheet dated October 25, 2023, which lists the Petitioner's projected satisfaction date as May 12, 2025, that he has a detainer, is ineligible for First Step Act, and his detainer has been "updated to final order on Aug[ust] 9, 2023" [Id. at 4–6];

(4) "Inmate Education Data Transcript" dated February 6, 2024 [Id. at 7]; and

(5) "Individualized Needs Plan – Program Review" dated February 29, 2024, which lists a projected release date of May 12, 2025 [Id. at 8–10].

The Petitioner filed another document [ECF No. 26] on March 25, 2024, styled "Motion to Supplement the Record," with the following exhibits:

(1)     Excerpted pages 3–4 of "Sentence Monitoring Computation Data" sheet

---

[12] After the Petitioner filed this document, the United States Supreme Court decided Federal Bureau of Investigation v. Fikre, 601 U.S. 234, 144 S.Ct. 771 (2024), which addressed whether Fikre's claim that he was wrongfully placed on the Do No Fly list became moot after the government removed Fikre from the list. The Supreme Court affirmed the judgment of the Ninth Circuit, finding that in the national-security context it was impossible to conclude the government met its burden of proving the dispute moot. 144 S.Ct. at 779.

dated February 14, 2023 [ECF No. 26-1, 26-2];

(2)      "Supervision Release Plan" dated March 7, 2023 [ECF No. 26-3]; and

(3)      "Department of Homeland Security: Immigration Detainer – Notice of Action" dated August 9, 2023 [ECF No. 26-4].

On March 26, 2024, the Respondent filed a reply which asserts that although the Petitioner "originally had 365 days of First Step Act ETC applied towards his release, he became ineligible for such application of credits once BOP became aware of the Final Order of Removal." ECF No. 27 at 3. Further, the Respondent contends:

> Petitioner himself attached the Final Administrative Removal Order at page 4 of ECF No. 21-2 filed in this case. Although it reflects a date of entry of January 15, 2021, BOP did not receive the detainer and Order until August 9, 2023. It was upon receipt of the detainer and Order that BOP made the determination Petitioner was not eligible to have the credits applied. . .
>
> [Further] any challenge Petitioner raises as to either the existence of or validity of the Final Order of Removal is not proper before this Court. Petitioner should address any concerns regarding his final order of removal through the appropriate channels within the U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") and/or appeal his final order of removal in a different proceeding.

Id. at 3.

### III.      LEGAL STANDARD

#### A.      Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the

record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

### B.     Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[13] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

---

[13] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

**C.    Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241**

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 – 499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

**D.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough

to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence"

favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

The Petitioner contends that he is entitled to early release from incarceration based on his Earned Time Credits under the First Step Act. However, the Respondent counters that based on Petitioner's final order of removal, he is ineligible to earn Time Credits.

The method of earning time credits under a risk and needs assessment system

pursuant to the First Step Act is codified at 18 U.S.C. § 3632(d)(4)(E), which provides in part:

> **(E)     Deportable prisoners ineligible to apply time credits.-**
>
> **(i) In general.** -- A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))).
>
> **(ii) Proceedings.** -- The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any alien described in section 212 or 237 of the Immigration and Nationality Act (8 U.S.C. 1182, 1227) who seeks to earn time credits are subject to proceedings described in section 238(a) of that Act (8 U.S.C. 1228(a)) at a date as early as practicable during the prisoner's incarceration.

The statute unequivocally states that a prisoner subject to a final order of removal is **ineligible to apply time credits** toward prerelease custody or supervised release. Further, pursuant to subparagraph (C), the BOP shall only transfer "eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."

The Respondent further argues that the Petitioner's order of deportation and removal is entitled to a presumption of regularity. ECF No. 8 at 3. The Supreme Court has noted, "that a presumption of regularity attaches to the actions of Government agencies, [ ] and that some deference to agency disciplinary actions is appropriate." U.S. Postal Serv. v. Gregory, 534 U.S. 1, 10, 122 S. Ct. 431, 436 (2001) (citing United States v. Chemical Foundation, Inc., 272 U.S. 1, 14–15, 47 S.Ct. 1 (1926)). See also Nardea v. Sessions, 876 F.3d 675, 680 (4th Cir. 2017) (Fourth Circuit

presumed that, absent clear evidence showing otherwise, the government necessarily obtained the Argentinian citizen's waiver to challenge any subsequent removal order. "To hold otherwise would flip the 'presumption of regularity' on its head and have us presume that every entry is irregular'").

A government record submitted by the Respondent shows that a final order of removal was filed against the Petitioner, and that his identity was confirmed through biometric records, and through a records check of federal databases. ECF Nos. 13-2, 13-6. That document, "Department of Homeland Security Immigration Detainer – Notice of Action" shows that the Petitioner is a removeable alien, and is signed by deportation officer Robert G. Faber. Id.

Moreover, the Petitioner himself filed copies of the documents which he contended did not exist: (1) "Memorandum for Inmate Population" dated February 20, 2024, which identifies inmate representatives from each housing unit at FCC Hazelton [ECF No. 21-1]; (2) "Department of Homeland Security: Immigration Detainer – Notice of Action" dated August 9, 2023, and signed by Immigration Officer Robert G. Faber [ECF No. 21-2 at 1]; (3) "U.S. Department of Homeland Security: Warrant for Arrest of Alien," also known as the Form I-200, dated August 9, 2023, for Julian Lucia Cedano [Id. at 2], and the "Continuation Page for Form I-200" which states that Julian Lucia Cedano is also known by other aliases, Gilbert Rosa Sanchez and Gilberto Rosa Sanchez [Id. at 3]; and (4) "Final Administrative Removal Order" dated January 15, 2021, for Julian Lucia Cedano AKA Gilbert Rosa Sanchez, and Gilberto Rosa Sanchez [Id. at 4]. ECF No. 21-2.

In this proceeding, the Petitioner has contested that he is an illegal alien subject

to deportation, and asserts that he was previously found to be eligible for Earned Time Credits under the First Step Act. However, the Petitioner's submission of numerous exhibits show that he was aware that he was subject to an ongoing removal proceeding noted in the "Department of Homeland Security: Immigration Detainer – Notice of Action," dated March 11, 2019. ECF No. 2-5 at 2. Moreover, the "Final Administrative Removal Order" filed by the Petitioner dated January 15, 2021, but signed August 9, 2023, by Authorized Official Gigliotti, demonstrates that the Petitioner was aware of the removal proceedings, and had notice of the final determination made in those proceedings. ECF No. 21-2.

Pursuant to the holdings of <u>Gregory</u>, <u>Chemical Foundation, Inc.</u>, and <u>Nardea</u>, the presumption of regularity attaches to the actions of Government agencies, and deference should be granted to the actions of those agencies.

In several of his additional filings, including his multiple responses to the Respondent's motion to dismiss, the Petitioner has asserted that the BOP has unlawfully "revoked" his Earned Time Credits, after those ETCs were awarded to him. ECF Nos. 22 at 7, 23 at 3, 24-1 at 2. He further contends that statutes, regulations, and BOP Program Statements support his claims. However, the statutes and regulations he cites to do not support these claims.

BOP Program Statement 5410.01, and related 28 C.F.R. part 541, address an inmate's loss of FSA time credits based on Discipline Hearing Officer determination, not based on a determination of ineligibility based on an inmate's immigration status. https://www.bop.gov/policy/progstat/5410.01_cn2.pdf. Moreover, a review of 28 C.F.R. § 523.43(b) regarding the loss of FSA Time Credits, reveals that an inmate "may seek

review of the loss of earned FSA Time Credits through the Bureau's Administrative Remedy Program (28 CFR part 542)."[14] Further, pursuant to 28 C.F.R. § 523.43(c) "[a]n inmate who has lost FSA Time Credits under this subpart may have part or all of the FSA Time Credits restored to him or her, on a case-by-case basis, after clear conduct (behavior clear of inmate disciplinary infractions under 28 CFR part 541) for two consecutive risk and needs assessments conducted by the Bureau." However, nothing in these regulations or Program Statements overrules the mandate of 18 U.S.C. § 3632(d)(4)(E) which makes inmates subject to a final order of removal and ineligible to apply Earned Time Credits.

The Petitioner argues that because he was once deemed eligible for Earned Time Credits, it is unlawful to "revoke" those time credits based upon later determinations. However, the Petitioner was long aware that immigration proceedings related to his possible removal were ongoing. His own exhibits demonstrate that as early as March 11, 2019, there existed an Immigration Detainer which advised the Petitioner of "[t]he pendency of ongoing removal proceedings" against him. ECF No. 2-5 at 5. That same document was served upon the Petitioner on January 14, 2021, by inmate delivery mail. Id. Moreover, the document states that the Petitioner's estimated release date is April 15, 2025. Id. To the extent that Petitioner contends that the Executive Office for Immigration Review has "no record" of his pending case, the correspondence that the Petitioner submitted shows that he repeatedly failed to

---

[14] To the extent that the Petitioner has pursued administrative remedies to address the claims in his petition, it is unclear if he ever exhausted any challenge to the "revocation" by the BOP of his Earned Time Credits under the First Step Act. The copies of an administrative remedy submitted on November 14, 2023, constitute only an application for an administrative remedy with the Central Office. ECF No. 2-1 at 7–8. Although the Plaintiff claims to have exhausted his administrative remedies [ECF No. 1 at 8], neither party submitted a final determination from the Central Office related to this appeal, nor did the government raise exhaustion in its motion to dismiss.

provide EOIR with sufficient identifying information to locate the records, including his failure to provide that agency with and "Alien number" or " 'A' number." ECF Nos. 2-5 at 3. 21-4 at 1, 21-5 at 1.

Accordingly, it appears to the undersigned that the parties have demonstrated that the Government agency which documented the Petitioner's status as an alien subject to deportation is entitled to a presumption of regularity by the submission of a detainer which states that the Petitioner is subject to a final order of removal. The Petitioner has failed to demonstrate by clear evidence showing otherwise that he is not subject to a final order of removal and is therefore unable to rebut the presumption of regularity, because among other reasons the Petitioner himself submitted copies of his final order of removal. The undersigned therefore determines the Petitioner is subject to a final order of removal and under the clear provisions of the statute, 18 U.S.C. § 3632(d)(4)(E), he is ineligible to earn time credits toward his sentence under the First Step Act. For all of the above reasons, the undersigned finds that the Petitioner is not entitled to relief on the merits of his claim which should be dismissed with prejudice.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be DENIED and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE** because Petitioner fails to state a claim based on his final order of removal which makes him ineligible to earn time credits under the First Step Act.

It is further **RECOMMENDED** that Respondent's motion to dismiss [ECF No. 13]

be **GRANTED**.

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED:**     May 17, 2024


/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE